The next case, number 221473, United States v. Jesus Arley Munera-Gomez. At this time, would counsel for the appellant please introduce himself on the record. Good morning, Your Honors. Eric Burdett for the appellant, Jesus Munera-Gomez. I'd like to reserve three minutes for rebuttal argument. Okay. Eubank. Thank you. The appellant brings three arguments before the court today. I'd like to start by discussing the first, that the district court erred by not requiring the government to offer use immunity to an essential or a necessary defense witness, Mr. Fabio Chiane. Okay, and when you address that, could you tell us what the standard of review is, and then within that standard proceed? Sure. For matters of law, it's de novo, and then for issues of fact, it's for clear error. Your Honor, the standard was abuse of discretion. Excuse me. I misspoke, right? Abuse of discretion for issues of fact. I apologize, Your Honor. At the core of this argument, the issue is that the government has the authority granted by the legislature to offer immunity to witnesses, but at the same time, the defendant has a right to a fair trial, to due process. And when those two forces meet, the question is, how does the court resolve that issue? There's two theories to that, and the First Circuit discusses those theories in the Angiulo case. And, Your Honors, the first theory, which was rejected by the court, was the effective defense theory. At the time, it was accepted by the Third Circuit, but was subsequently overturned in the U.S. v. Quinn, and I want to discuss that in more depth later. But for now, I want to go over the prosecutorial misconduct theory. It is a bit of a misnomer because it doesn't require bad faith by the government, but assuring that the government intentionally distorted the fact-finding process by deliberately withholding immunity from a witness. And when I say immunity, we're talking about use immunity in this case, immunity that the witness only be granted immunity for the testimony in the case where the defendant is being tried. To overcome that, the government apparently needs simply only offer that they, in the future, intend or may prosecute the witness for the defendant. And wasn't that witness, in fact, undergoing a prosecution at the time? That's correct, Judge. But the key distinction is that the type of testimony and the facts the defendant wished to elicit, which was exculpatory in his case, was not the offense conduct for which he was charged. Mr. Chiano, the witness in this case, was being charged for drug crimes, the investigation in crimes beginning in 2018. The testimony that the defendant wished to elicit was that in 2016 to 2017, Mr. Chiano was importing narcotics with a source of supply named, he referred to as Pikachu. But couldn't that be used in the trial for 2018 conduct? Because it's, conceivably, it could be 404B evidence, or it could be used to impeach, or the government can use that in many creative ways, and I've seen it over the years. So isn't that, again, it's an abuse of discretion judgment call by the judge? Yes, Your Honor, but the key word that you use there is conceivably. Where the defendant has an immediate need for a fair trial, whether the government can conceivably use information in the future seems to, or should take second seat to the defendant's necessity to his Fifth Amendment right. And furthermore, if the witness were granted use immunity in the defendant's trial, Mr. Munera's trial, it's unclear that the government wouldn't still be able to use that information should they have some independent source of knowledge for it, which they are free to choose. And that additional burden that granting immunity would bestow upon the government should not be enough to dissuade this court from requiring that the defendant receive a fair trial. Counsel, didn't the defendant testify here? Yes, Your Honor, which makes the... So he was able to testify about his interactions with the government confidential informant, correct? That's correct. And he was able to articulate why he thought he had been entrapped, although there was independent evidence of some prior drug dealing on his part, correct? Correct, Your Honor. Okay, so tell me what is it that you hope to get had immunity been granted from the confidential informant? Yes, Your Honor, the importance of the witness, Mr. Quijano in this case, was that he posed to not only impeach the confidential source, but also the entrapment defense requires that the defendant prove that he had no propensity or proclivity to commit the crime for which he's charged prior to the unfair inducement by the government. Mr. Quijano's testimony that Mr. Munera in this case had no past experience as a drug dealer would go directly toward that point. Instead, what happened was that Mr. Munera's credibility was pitted against the informant's, and it was a 1 v. 1 in its cleanest form, if you were to count it that way. But Mr. Quijano would have provided not only support for Mr. Munera's testimony, but also contradicting the informant in this case, which is what makes him so probative to the jury. Contradicting just on the point about whether CW had been involved in drug transactions previously? So Mr. Quijano would have offered testimony that in 2016, 2017, when he was importing cocaine with this Pikachu character, that Mr. Munera was not that individual. In a proffer with the government, Mr. Quijano was shown a picture of the defendant and said that he didn't recognize him. He knew him from Plymouth, from being in custody, but he was not the person that was involved in his previous drug transactions. However, the informant testified that Mr. Munera was, in fact, this individual Pikachu, the source of supply. So it's a direct contradiction that goes toward Mr. Munera's defense. Your Honor, there's a few different solutions in the circuits as to how to resolve this. And I mentioned U.S. v. Quinn earlier. It is important for the court to consider the degree of necessity of the witness for which the defendant is requesting immunity. So as to that, I take it that our case law is pretty consistent, that it's not just sort of an equal balancing weighing, but that the scales are heavily tipped, that much of this is in control of the government. And it seems to me from our case law, it's a pretty heavy burden that you would have to overcome. Do you disagree with that? No, I do agree, Judge. But it seems that there are multiple ways to resolve this issue. In this case, for instance, the defendant requested a continuance of the trial beyond the sentencing date or conviction of the witness, which was denied and objected to by the government. And so he was forced to request immunity here. And that kind of leads to where we are today. I'm sorry, I don't understand that. Why would a continuance have helped? If the case were continued beyond the conviction of Mr. Quijano, then he would no longer have the Fifth Amendment privilege not to testify. And that might be years later. And the testimony in this case, witnesses forget things. I still don't see it. Well, Mr. Quijano was scheduled for trial later the same year as Mr. Munera. The same year? Correct, Judge, a few months later. I don't recall the exact date. Getting back to the U.S. v. Quinn, in the framework that the Third Circuit's currently set up now is that the necessity for the witness or to preserve the defendant's right to a fair trial is kind of measured. And if it is determined to be legitimate and a necessity, then it becomes an assessment by the district court judge to evaluate whether or not the trial can go forward under the current circumstances. And so it's not necessarily forcing the government to offer immunity, but simply stating to the government, look, you can't try a defendant under these circumstances. You can grant immunity to this witness or you can find another workaround. You can limit your examination. But the fact of the matter is the court should preserve the defendant's right to a fair trial. And where the government has immunized certain witnesses to testify against the defendant and refused to immunize others, then, as the Ninth Circuit has put it, there can be no semblance of a fair trial. I only have two and a half minutes left. Counsel, I'd like you, if you could address the safety valve issue that you raised. I understand that you say your client testified at trial. For the safety valve to apply, 18 U.S. Code Section 3553E, the testimony or the statements have to be complete and they have to be truthful. Even assuming they were truthful, why do you understand they were complete and they would qualify for the safety valve? Sure. And let me say, from my experience, for them, for a statement, when you're at trial, the defendant will testify, whatever is necessary. By the time there's a safety valve, there's going to be a sentencing. And you can apply even to the conviction at trial. But there's usually going to be a debriefing by a case agent because there's probably going to be more information. Or sometimes in the statement, if there's a plea, I know sometimes from the statement of facts, the government says that's enough information. Other times from the pre-sentence report and also the statement of facts and the plea grant. But here, how do you reach the conclusion that this was 100% complete? Yes, Your Honor, because the defense in this case was an affirmative defense, the defendant admitted to all of his offense conduct. The question before the jury was simply whether or not the inducement by the confidential source rose to the level of entrapment and whether or not the defendant had a predisposition to commit the crime. And so by testifying about all of his offense conduct, that's what qualifies as being complete. In addition to that, the government subjected the defendant to cross-examination, and he admitted to all the essential elements and additional things that he wasn't required to necessarily admit to, but he was being truthful and forthright. But it has to be complete. So there could be things that are, again, and the safety valve is broader because it talks not only about the defendant's conduct but anything associated with the offense of conviction. Yes, and the government did not, they alleged that his testimony wasn't truthful, but not that he withheld certain things unless he was being deceitful when he did so. And because the government had the opportunity to ask those questions, and he did offer that. Do you have any cases on point that say when somebody testifies in a similar manner at trial, he or she can get the safety valve? Well, the court has discussed and not eliminated the possibility, but there is that the safety valve completeness and truthfulness can be satisfied by even a letter. It doesn't need to be sworn testimony even. May I ask a question? Yes, please go ahead. Sorry to go out of order, but I want to go back to your lead argument here, not on the safety valve. It seems that you want to use the witness to impeach CW for credibility purposes generally, but more particularly in the initial decision to approach the defendant. Once that approach is made, there's all kinds of evidence supporting that there was predisposition. His own words, right? It's all recorded. Judge allowed to weigh that, or does the judge have to look at necessity just with respect to this specific instance that you want to use it for? I think the court should weigh that information, but the issue is when you look critically at those accusations by the government that the defendant was predisposed to commit the crime, there's explanations for all of them. For instance, the money. Okay, so I get that, but if the judge is allowed to weigh all that, and the standard is abuse of discretion, how could we say that the discretion was abused here? Well, that testimony wasn't. I guess one problem, Your Honor, is that that testimony came on after the court determined that the witness should not be provided immunity. So it couldn't have been weighed when the decision was made. All right. Thank you. Counsel, yes. Here's what bothers me about your argument. Normally the grant of immunity, whether it's use immunity or broader immunity, is a decision taken by the executive branch of the government. And normally courts are very reluctant to intrude on the executive branch's decisions for Article III reasons. It is true that there is a very limited carve-out when absolutely necessary to protect the due process rights of defendants. But as I've always understood it, it is quite, quite narrow. And you are urging that we adopt a broader standard. I'm not clear exactly what the standard is you want us to adopt. So if you could state that, please, and then state why you think it's appropriate given the Article III concerns. Yes, Your Honor. So first of all, I just want to say that the carve-out, I believe, Your Honor, is referencing in yours versus Mackey. I do believe this case qualifies for that. I think the government's interest in refusing to offer use immunity was trivial because the witness in the case wasn't being charged with that offense conduct and could still proceed with the case against the witness, even after granting use immunity. And it was clearly essential to the defendant's entrapment defense in this case. But even beyond that, where a defendant has a compelling... Why is it essential, going back to Judge Howard's question, where your client essentially is caught admitting a predisposition? Well, yes, Judge. The claim at the trial was that Mr. Munera had received... Well, the admission came from the informant. Mr. Munera denied that he had a past involvement with the drug trade. And it was the informant that claimed that he did have this past involvement in importing narcotics, which, once again, brings me back to the importance of Mr. Quijano, which would have contradicted that exact testimony. Okay, all right. We're going in circles at this point. Thank you. Thank you, Your Honor. Okay, thank you. Ms. DeVicentes. Dan, Dan. Good morning. May it please the Court. Alexia DeVicentes on behalf of the United States. Good morning, Counsel. And let me just say, if maybe you could, at least two of your 15 minutes, address the safety valve issue, which I asked the opposing counsel, at whatever time you think appropriate. Thank you. Sure, if Your Honor would prefer, I'm happy to start there. Well, if you want to start that briefly and then go to the other issue. Okay. Sure. The standard overview here on the safety valve issue is clear error. And there was ample evidence in the record that the defendant's testimony was false. We have cataloged in our brief a number of examples of inconsistencies in the defendant's testimony. And the District Court did not clearly err in finding that that testimony was false. And furthermore, that by dint of having essentially fabricated a contraption defense, the defendant necessarily did not provide all the information that he had to provide concerning the offense of conviction. Okay, thank you. So go ahead with the. Turning then to the question of use immunity, the defendant didn't challenge below and has not challenged on appeal the good faith of the government's assertion of a legitimate interest in withholding use immunity from a potential witness who was then under indictment for various drug trafficking and money laundering offenses. And although he seems not to want to use the label, effectively what the defendant is suggesting is that this court should apply the effective defense theory in this case. Now this court did in Mackey reserve the hypothetical possibility that on a case involving extreme facts that effective defense theory might apply, but this is clearly not that case. As an initial matter, the defendant did not have an overwhelming need for this evidence. In fact, his entire argument that he did have an overwhelming need for it seems to be premised on the notion that the government's sole evidence of predisposition came from the CW. But as Judge Howard's questions pointed out, in fact the government's best evidence of predisposition came from the five recorded meetings in which the defendant is variously discussing his Mexican source of supply, how many, the quantity of drugs he's buying from that source of supply, the price at which he is buying them, the fact that he's been shorted on occasion, the fact that he prefers bricks of cocaine to rounded discs, and the fact that he cares about the quantity and price, or excuse me, the quality and the price of this deal. And do you know, it's okay if you don't know this, but does the record show whether the judge was aware of the recordings and that testimony prior to making this ruling? Standing here at this moment, Your Honor, I'm not entirely certain that the answer is that. Motions in limine or anything about that? You just don't remember? Off the top of my head, I don't, Your Honor, I apologize. But the fact that all of this evidence was available to the government to May I just ask, was the ruling made before opening statements? It was, Your Honor, yes. Okay. The fact that the government did, in fact, have all of this other evidence of predisposition, distinguishes this case from the exceedingly rare cases in which government courts have recognized that the effective defense theory might apply or have found that it did apply, which generally involves situations where you have two eyewitnesses to a particular event, and one of those witnesses' testimonies would offer exculpatory evidence. Effectively, what the defendant is left with here is the suggestion that the testimony of Kehano would have been impeaching of the CW, but even courts that recognize the effective defense theory have held that it doesn't apply to evidence that would be merely impeaching as opposed to absolutely exculpatory. Moreover, the government's interest here was anything but slight. As noted, Kehano was then under indictment for various significant drug trafficking and money laundering offenses with connection to a Medellin drug cartel. And the government had a clear interest in avoiding the heavy burden under Castigar of proving that any evidence that it offered at Kehano's later trial, which was then set to occur within a few months, or at Kehano's later sentencing, didn't derive either directly or indirectly from the cross-examination or testimony of him at Munera's trial. Unless the court has any further questions, the government would rest on its feet. If you could address your position as to the restrictions on the testimony of the defendant's girlfriend. Sure. I think if this court goes line by line through the approximately 12 pages of Holguin's direct testimony examination, what the court will find, excuse me, what the court will find is that Holguin was permitted to testify about Munera's demeanor when conveying to her what it was that the CW had allegedly said. What she wasn't allowed to do was talk about what it was that he was feeling, which she had absolutely no personal knowledge of. And she wasn't allowed to say what he said he was feeling, which are out-of-court statements plainly offered for their truth. The witness was also allowed to testify about the business that the CW was offering to Munera. And she was furthermore allowed to testify about that individual's living conditions. Now there were a few instances of questions in which the government's objections were sustained in response to questions about the individual's living conditions. But by that point in the testimony, Holguin had already testified that this individual didn't have enough, allegedly, did not have enough money to eat, and was quote-unquote living worse than a rat. There's no indication in the record whatsoever of what more Holguin possibly could have offered on that point. And Munera's own testimony said only that the CW had told him that he was living in a closet and, quite frankly, living worse than a rat sounds worse than living in a closet. And so I think the import of the testimony was already made available to the jury. Okay. Thank you. Any more questions? Judge Lynch or Howard? Okay. Thank you very much. Thank you. And let's have rebuttal now. Please reintroduce yourself on the record to begin. Eric Burdette for Mr. Munera for the appellate. I'd like to address two things briefly. First of all, the government argues that there was ample evidence aside from the informant's testimony that he was an experienced drug dealer and not telling the truth. When you go through those arguments and those specific factual references, each of those have alternative explanations, but the government does not have explanations for the fact, for several things. First of all, that Mr. Munera did not know the price of a kilo of cocaine, which while a person may be able to fake saying things like, oh, I prefer rectangular kilograms over round ones, when you get to the specifics, Mr. Munera wasn't aware. For instance, the price of a kilogram of cocaine or that a transportation fee, he was paying $10,000 to transport each kilogram of cocaine when the CS, an experienced drug dealer, said that $1,500 is the going rate for that. The government has no explanation for why Mr. Munera didn't have these simple facts, because the explanation is he was not an experienced drug dealer. The second point is I just want to contextualize Ms. Wheelis' testimony, the defendant's girlfriend. When you look at the testimony, there's about seven pages there. Isn't it the fair import of the recordings that he represented himself as an experienced drug dealer? That's true, Judge. So he admitted to predisposition. Right, but when he testified at trial, he denied that and claimed that he did that because he was trying to make himself sound more experienced than he was. Exactly. In the negotiation, which is a normal posturing that happens. If you're predisposed to enter into an arrangement. Well, Judge, I'm not trying to be a wise guy. I'm just trying to understand. But he testified that his main priority in this case was the finances, how much money he was going to make out of this deal. So by coming across as experienced, it would make a way for him to maximize those profits. That's why he made the recorded statements that he was experienced. When you look at Ms. Wheelis' testimony and the objections, the relevant testimony lasts about seven pages in transcript. During that stretch, the government made 17 objections, 14 of which were sustained. And the testimony that's left over that the jury has to parse through, disregarding the objective two questions, is very limited. It's disjointed, and it's not tied to specific comments that the informant made in their effect on the defendant, which is what was relevant to the entrapment defense. And I just want to point the court to. Let me ask you, when these objections were made and on the record, to best your recollection, and the objections were sustained, was there any proffer to the court as to why that was necessary at that particular point, or were there just objections, Your Honor, sustained, let's move on, and that was it? The trial counsel did say he was offering them for the state of mind of the defendant. And once that was, the objection was still sustained, he requested to go sidebar, but that was also denied. And I just want to finish by, I think what epitomizes the restrictions on Ms. Wheeler's testimony, the addendum page 10, when Mr. Munira tried to testify about not wanting to go through with the drug deal, which would be a classic evidence of his state of mind, and that was stricken from the record and not allowed to reach the jury. Okay. Thank you. Judge Lynch, Judge Howard, any more questions? No. Okay. Thank you very much. Okay. Let's call the civil case. That concludes argument in this case. Thank you.